IRVING COHEN
233 Broadway, Suite 2701
New York, New York 10279
(212) 964-2544
Attorney for Plaintiffs
(IC 3708)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x

MYRIAM MOLLER-FOLEY and
REINALDO SANTIAGO,

                    Plaintiffs,

CITY OF NEW YORK, OFF. (FNU) QUIS (Shield No.31943),
OFF. JOHN AND JANE DOES, POLICE OFFICERS FOR
THE CITY OF NEW YORK, INDIVIDUALLY AND AS
POLICE OFFICERS FOR THE CITY OF NEW YORK,
                    Defendants
-------------------------------------------------------------------------- x

FIRST AMENDED
COMPLAINT AND
DEMAND FOR JURY TRIAL

12 CV 5008 (JGK)

## INTRODUCTION

1. This is an action for damages for the wrongful acts of defendants NEW YORK CITY and OFF. (FNU) QUIS, OFF. JOHN and JANE DOES of the New York City Police Department, all acting under color of state law and pursuant to their authority, in violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York.

2. Plaintiff Moller-Foley alleges that beginning on or about July 14, 2011, defendants committed wrongful and illegal acts against Plaintiff Moller-Foley by falsely arresting her and imprisoning her, searching her and her home, maliciously prosecuting her, and violating her Federal and New York State civil rights, and Plaintiffs Moller-Foley and Santiago allege that on December

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

1

15, 2011, defendants committed wrongful and illegal acts against Plaintiffs Moller-Foley and Santiago by falsely and without cause detaining them, searching them and violating their Federal and New York State Civil Rights.

## JURISDICTION

3. This action is brought under 42 U.S.C. Section 1983 in conjunction with the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and the constitutional, statutory and common laws of New York State.

4. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. Section 1331 and 1343, this being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

5. Plaintiff furthers invokes this Court's pendant jurisdiction over any and all state law claims and causes of action which derive from the same nucleus of operative facts that give rise to the federally based claims and causes of action, pursuant to Title 28, U.S.C. section 1367.

6. Venue is laid within the United States District Court for the Southern District of New York in that the actions complained of occurred in the Southern District of New York.

## TRIAL BY JURY

7. Plaintiffs demand a trial by jury on each and every one of their claims as pled herein.

## PARTIES

8. At all times relevant hereto, plaintiff MYRIAM MOLLER-FOLEY was a resident of the Bronx, New York.

9. At all times relevant hereto, plaintiff REINALDO SANTIAGO was a resident of the Bronx, New York.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

10. At all times relevant hereto, defendant NEW YORK CITY was and is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department, which employs the other named defendants.

11. Defendant (FNU) QUIS is and was at all times relevant to this action a police officer, employed by the New York City Police Department, and acting under color of state law. He is being sued in both his individual and official capacities.

12. Defendants JOHN and JANE DOES are and were at all times relevant to this action police officers, employed by the New York City Police Department, and acting under color of state law. They are being sued in both their individual and official capacities.

13. At all times relevant hereto and in all their actions described herein, defendants (FNU) QUIS, JOHN AND JANE DOES were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the New York City Police Department and New York City, pursuant to their authority as employees, servants and agents of the New York City Police Department, within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers.

14. The conduct and injuries complained of herein ensued without any negligent or culpable conduct on the part of the plaintiffs.

## NOTICES OF CLAIM

15. On January 17, 2012, plaintiff Moller-Foley's Notice of Claim was filed with the Comptroller's Office of the City of New York. More than thirty days have elapsed since the filing of the Notice of Claim and this matter has not been settled nor otherwise disposed of.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

16. On March 9, 2012, a hearing pursuant to New York State General Municipal Law §50-h was held at which time plaintiff Myriam Moller-Foley was questioned by a representative of defendant New York City.

17. The transcript of this hearing is attached hereto as Exhibit A and as factual support for the causes of action alleged herein and is made a part of this Complaint.

18. On March 13, 2012, a Second Notice of Claim was filed on behalf of Plaintiff Moller-Foley. More than thirty days have elapsed since that filing and this related matter has not been settled nor otherwise disposed of.

19. On September 7, 2012, a second hearing pursuant to §50-h was held at which time plaintiff Moller-Foley was again questioned by a representative of defendant New York City.

20. The transcript of this second hearing is attached hereto as Exhibit K and as factual support for the causes of action alleged herein and is made part of this First Amended Complaint.

21. On March 13, 2012, a Notice of Claim was filed on behalf of Plaintiff Santiago with the Comptroller's Office of the City of New York. More than thirty days have elapsed since the filing of the Notice of Claim and this matter has not been settled nor otherwise disposed of.

22. On September 7, 2012, a hearing pursuant to New York State General Municipal Law § 50-h was held at which time plaintiff Reinaldo Santiago was questioned by a representative of defendant New York City.

23. The transcript of this hearing is attached hereto as Exhibit L and as factual support for the causes of action alleged herein and is made part of this First Amended Complaint.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

## FACTUAL BACKGROUND

24. Plaintiff Myriam Moller-Foley was living at 2911 Coddington Avenue, Bronx, New York during the summer of 2011.

25. Ms. Moller-Foley is 62 years old and has suffered four strokes since the early 1990's.

26. In the past she worked at the United Nations and at Citibank.

27. Ms. Moller-Foley has always been and continues to be a lover of animals.

28. Her downstairs neighbor, Jason Jaime, owned a terrier dog.

29. At some point, a woman named Michelle Lorenz took up residence with Mr. Jaime along with her six or seven year-old son.

30. Ms. Lorenz was pregnant.

31. Ms. Moller-Foley had a conversation with Ms. Lorenz concerning the dog.

32. In this conversation, Ms. Lorenz said that she was fed up with Mr. Jaime having this dog in the apartment; that she had a child and was pregnant and that she was overwhelmed.

33. Ms. Lorenz also said that she would be happy if the dog was taken away when the baby arrived, expressing these feelings in a scatological manner.

34. Soon after, Mr. Jaime claimed to have lost this terrier dog around June 11, 2011.

35. Ms. Moller-Foley saw a photograph of the dog on the website of the New York City Animal Shelter on June 13, 2011.

36. Ms. Moller-Foley was told that the dog was a stray that had been dropped off at the shelter.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

37. If the dog were not to be claimed by its owner-or adopted-it would be euthanized.

38. Ms. Moller alerted Mr. Jaime that the dog was now at the Shelter by placing a printout of the dog's photograph under his door.

39. Ms. Moller told Mr. Jaime about the dog being at the Shelter later that same day.

40. She told him that the dog would be euthanized if he did not claim the dog within a short period of time.

41. Mr. Jaime expressed indifference to this fact intimating on that day and on many later days that it was not his dog.

42. Apparently, a fee would have to be paid for the dog to be claimed.

43. Ms. Moller offered Mr. Jaime money, if he needed it, to retrieve the dog from the Shelter.

44. Over one week passed and Mr. Jaime had not retrieved the dog.

45. As a result, Ms. Moller-Foley decided to adopt the dog.

46. On June 19, 2011, she went to the Shelter and was told the dog was to be put to sleep the next day.

47. She filled out all the appropriate papers to legally adopt the dog.

48. Ms. Miller-Foley paid all the appropriate fees.

49. She paid for the dog's medical examination and for the dog to be "fixed."

50. She obtained all the legal papers documenting her adoption of the dog.

51. Ms. Moller-Foley brought the dog home.

52. She then spoke to Mr. Jaime in order for him to have his pet back.

53. She told him that he did not have to reimburse her for the costs she paid to retrieve the dog from the Shelter.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

54. Ms. Moller-Foley asked him to sign a paper releasing her from responsibility for the dog once he obtained the dog from her.

55. Mr. Jaime refused so Ms. Moller-Foley retained possession of the dog.

56. Over one month later, on or about July 14, 2011, Mr. Jaime, it appears, called the police.

57. Defendant Police Officer Quis of the 45th Precinct arrived at Ms. Moller-Foley's residence along with about eight other uniformed officers.

58. The police pushed Ms. Moller-Foley and insisted that she had stolen the dog.

59. Ms. Moller-Foley told Off. Quis that she had legally adopted the dog.

60. She presented Off. Quis with all the documents she possessed demonstrating this legal adoption.

61. These included the following attached as exhibits:

(B) Receipt of dog license;
(C) Receipt for S/N deposit;
(D) Adoption Agreement;
(E) Animal Condition Agreement;
(F) Shelter photograph and lost dog announcement;
(G) New York City Dog License.

62. The Officer told her the documents were "bogus", tossed them away, took the dog away and gave it to Mr. Jaime.

63. Ms. Moller-Foley called a lawyer who spoke to Off. Quis at that time and explained to him that she was now the legal owner of the dog and was committing no crime.

64. Nevertheless, Off. Quis arrested Ms. Miller and took her into custody, placing handcuffs on her while twisting her arm.

65. Off. Quis took her to the 45th Precinct.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

66. At the precinct, Ms. Moller-Foley was paraded in front of everyone with the police acting like it was a show saying, in substance, "Here is this old lady who steals dogs, probably to sell them."

67. Ms. Moller-Foley was placed inside a cell-still handcuffed.

68. She was kept in the precinct for about three to four hours while the police tried to obtain proper fingerprints and photographs.

69. After about eight hours, Ms. Moller-Foley, who had not been able to take her blood pressure medicine, was feeling ill.

70. EMT arrived and took her to Jacobi Hospital even though she said she wanted to go to Montefiore Hospital where her doctors and records were.

71. At the hospital, Ms. Moller-Foley remained handcuffed.

72. She was returned to the precinct and remained there another two-and-a-half hours.

73. Apparently after speaking with more senior and supervising Officers, Off. Quis issued Ms. Miller a desk appearance ticket (DAT) to appear in court on October 4, 2011. (Exhibit H)

74. Ms. Miller was charged with Criminal Possession of Stolen Property despite the fact that she legally owned and possessed the dog.

75. Ms. Miller retained a lawyer to represent her.

76. Ms. Miller and her attorney appeared in court on October 4, 2011, but the case was adjourned.

77. She and her lawyer appeared once again in Criminal Court on November 3, 2011.

78. On that date, Ms. Miller was arraigned on a Criminal Court complaint charging her with Criminal Possession of Stolen Property in the Fifth Degree. (Ex. I).

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

79. She again appeared in court on December 14, 2011 with her lawyer.

80. On that date, the case was dismissed. (Ex. J)

81. As a result of the treatment by the police, Ms. Moller-Foley's blood pressure increased dramatically.

82. She suffered several "TIA's".(Transient ischemic attack, often referred to as a mini-stroke).

83. She has been prescribed stronger medication.

84. She also saw a cardiologist.

85. Because of the incident, she was forced to move from the home and neighborhood she had lived in for almost fourteen years.

86. On the date that she was moving, December 15, 2011, the day after the case was dismissed, some of the same officers who had arrested her came to her house again.

87. During the course of this encounter, Plaintiff Moller-Foley was again confronted by police who had their guns drawn at her.

88. The officers claimed to be investigating a (totally unrelated) crime.

89. Assisting Plaintiff Moller-Foley in the move that day was Plaintiff Santiago.

90. Mr. Santiago was assisting in loading a van to transport Plaintiff Moller-Foley's belongings.

91. Between 10:30 and 11:00 PM, the van was in front of the house with the back open.

92. The remaining items to be moved were Ms. Moller-Foley's pets (a dog and two cats), plants and pots.

93. The pets were in a closed kennel inside the van.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

94. Both Plaintiffs went back into the house to the second floor to check if everything was in order and to remove any garbage.

95. When Ms. Moller-Foley arrived in the living room, she was confronted by eight to ten police officers, some of whom had their guns drawn pointing at her, coming up the steps.

96. The officers shouted, "Don't move, don't move, police."

97. When she told the officers that the only other person present was her helper, (Mr. Santiago) they accused Ms. Moller-Foley of lying.

98. The police began searching the house.

99. The police seized Mr. Santiago at gunpoint and brought him downstairs to the street.

100. About three of the police officers were the same ones who had arrested Ms. Moller-Foley on July 14, 2012 for the dog stealing charges that were dismissed only the day before.

101. One of those was defendant Officer (FNU) Quis.

102. One of the officers actually asked Ms. Moller-Foley, "Do you recognize me; do you know me?"

103. The officers stayed in the apartment for over forty-five minutes.

104. The officers claimed that their visit was the result of a telephone call from Westchester in which the caller spoke of a shootout in which one person died.

105. From the time a woman named Arlene Orsi moved into the top (third) floor apartment about a year before, Ms. Orsi started creating trouble for Ms. Moller-Foley, apparently because Ms. Moller-Foley was the only tenant who had access to the backyard and parking.

106. It appears that Ms. Orsi is or was married to a New York City Police Officer.

107. At one point, one of the officers apparently confirmed that the call had actually come from Ms. Orsi.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

108. After at least a half-hour, during which time the Plaintiffs were in custody and the premises were searched, the officers left.

## COUNT ONE: VIOLATION OF CONSTITUTIONAL RIGHTS

109. Plaintiffs repeats and re-alleges the allegations contained in paragraphs 1-108 of this complaint, as though fully set forth herein.

110. The acts, omissions and conduct of the defendants, all members of the New York City Police Department, and all acting under color of state law, deprived plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United State; in particular the rights to be secure in their person and property, to be free from false arrest, false imprisonment, malicious prosecution, excessive force and cruel and unusual punishment and to due process.

111. By these acts, omissions and conduct, these individual defendants have deprived plaintiffs of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983, for which the defendants are individually liable.

## COUNT TWO: VIOLATION OF CONSTITUTIONAL RIGHTS
### (Defendant New York City)

112. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-111 of this complaint, as though fully set forth herein.

113. The acts, omissions and conduct of defendant New York City, as set forth above, deprived plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United States; in particular the rights; to be secure in their person and property; to be free from unlawful seizure, false imprisonment, malicious prosecution; excessive force and cruel and unusual punishment and to due process.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

114. By these acts, omissions and conduct, defendant New York City has deprived plaintiffs of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.

### COUNT THREE: CONSPIRACY TO VIOLATE CIVIL RIGHTS

115. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-114 of this complaint as though fully set forth herein.

116. The defendants conspired to violate plaintiff Moller-Foley's civil rights by agreeing between themselves to falsely charge her with crimes as described above, in violation of 42 U.S.C. 1983, for which defendants are individually liable.

### COUNT FOUR: FALSE ARREST

117. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-116 of this complaint, as though fully set forth herein.

118. The acts, omissions and conduct of defendants as alleged above, constitute false arrest under the laws of the State of New York. This Court has pendant jurisdiction to hear and adjudicate such claims.

### COUNT FIVE: FALSE IMPRISONMENT

119. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-118 of this complaint, as though fully set forth herein.

120. The acts, omissions and conduct of defendants, as alleged above, constitute false imprisonment under the laws of the State of New York. This Court has pendant jurisdiction to hear and adjudicate such claims.

### COUNT SIX: ASSAULT

121. Plaintiffs repeat and re-allege the allegations in paragraphs 1-120 of this complaint, as though fully set forth herein.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

122. The acts and conduct of defendants, as alleged above, constitute assault under the laws of the State of New York. This Court has pendant jurisdiction to hear and adjudicate such claims.

### COUNT SEVEN: MALICIOUS PROSECUTION

123. Plaintiff Moller-Foley repeats and re-alleges the allegations contained in paragraph 1-122 of this complaint, as though fully set forth herein.

124. The acts, omissions and conduct of defendants, as alleged above, constitute malicious prosecution under the laws of the State of New York. This Court has pendant jurisdiction to hear and adjudicate such claims.

### COUNT EIGHT: RESPONDENT SUPERIOR LIABILITY
### (Defendant New York City)

125. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-124 of this complaint, as though fully set forth herein.

126. At all times pertinent hereto, defendants were acting within the scope of their employment as officers of the New York City Police Department.

127. Defendant New York City is thus liable under the doctrine of respondeat superior, for the intentional torts of defendants, committed within the scope of their employment.

### COUNT NINE: NEGLIGENCE

128. Plaintiffs repeat and re-allege the allegations contained in paragraph 1-126 of this complaint, as though fully set forth herein.

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279

129. The defendants police officers, while acting as agents and employees for New York City, owed a duty to plaintiffs to perform their duties without violating plaintiffs' constitutional rights. Defendants' conduct constitutes negligence for which these defendants are individually liable.

## COUNT TEN: NEGLIGENCE
### (Defendant New York City)

130. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-129 of this complaint, as though fully set forth herein.

131. Defendant New York City owed a duty to plaintiffs to adequately screen prospective police officers, and to train, supervise and otherwise control its police officers in the use of their powers incidental to their employment. Defendant New York City failed to provide adequate screening, training, supervision, and control of the individual defendants, which failure constitutes negligence.

WHEREFORE, plaintiffs demand the following relief;

a. Compensatory damages in the amount of two million ($2,000,000 dollars).

b. Punitive damages in the amount of two million ($2,000,000 dollars).

c. Reasonable attorneys fees and costs; and

d. Such other and further relief as appears reasonable and just.

Dated: New York, New York
November 27, 2012

_____
IRVING COHEN
Attorney for Plaintiff
233 Broadway, Suite 2701
New York, New York 10279
(212) 964-2544

IRVING COHEN
ATTORNEY AT LAW
233 BROADWAY
NEW YORK, N.Y. 10279